UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN MORRISSEY,
    Plaintiff,

    V.                                    CIVIL ACTION NO.
                                          18-11386-MBB

COMMONWEALTH OF MASSACHUSETTS,
COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF CORRECTION,
CAROL MICI, THOMAS A. TURCO,
III, and STEVEN J. O'BRIEN,
    Defendants.


**MEMORANDUM AND ORDER RE:**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT BY DEFENDANTS**
**COMMONWEALTH OF MASSACHUSETTS, MASSACHUSETTS DEPARTMENT OF**
**CORRECTION, THOMAS A. TURCO III, AND STEVEN J. O'BRIEN**
**(DOCKET ENTRY # 7); MOTION TO DISMISS PLAINTIFF'S AMENDED**
**COMPLAINT BY DEFENDANTS COMMONWEALTH OF MASSACHUSETTS,**
**MASSACHUSETTS DEPARTMENT OF CORRECTION,**
**CAROL MICI, AND STEVEN J. O'BRIEN**
**(DOCKET ENTRY # 19)**

**May 9, 2022**

**BOWLER, U.S.M.J.**

Pending before this court are the following motions: (1) a
motion to dismiss the original complaint under Fed. R. Civ. P.
12(b)(6) ("Rule 12(b)(6)"), Fed. R. Civ. P. 12(b)(2), Fed. R.
Civ. P. 12(b)(4) ("Rule 12(b)(4)"), and Fed. R. Civ. P. 12(b)(5)
("Rule 12(b)(4)") filed by defendants Commonwealth of
Massachusetts ("the Commonwealth"); the Commonwealth of
Massachusetts Department of Correction ("DOC"); Thomas A. Turco,
III ("Turco"), former commissioner of the DOC (Docket Entry # 8-
1); and Steven J. O'Brien ("O'Brien") (collectively "original

defendants"); and (2) a motion to dismiss an amended complaint filed by the Commonwealth; the DOC; defendant Carol Mici ("Mici"), current commissioner of the DOC (Docket Entry # 8-1); and O'Brien (collectively "defendants").  (Docket Entry ## 7, 19).  Plaintiff John Morrissey ("plaintiff") opposes the motions to dismiss the original complaint and the amended complaint. (Docket Entry # 10) (Docket Entry # 21, p. 2, ¶ 4).  After conducting a hearing, this court took the motion to dismiss the original complaint (Docket Entry # 7) under advisement. Thereafter, defendants filed the motion to dismiss the amended complaint.  With briefing complete, both motions (Docket Entry ## 7, 19) are ripe for review.

## PROCEDURAL BACKGROUND[1]

Filed on July 2, 2018, the original complaint names Turco as a defendant in his individual and official capacities as the DOC commissioner.  In January 2019, Mici succeeded Turco as the DOC commissioner.  (Docket Entry # 8-1).[2]  Accordingly, she is

---

[1]  The procedural background includes facts regarding service.
[2]  This court takes judicial notice that Mici succeeded Turco as the DOC commissioner.  See U.S. ex rel. Winkelman v. CVS Caremark Corp., 827 F.3d 201, 208 (1st Cir. 2016) (court may "consider matters of public record and facts susceptible to judicial notice" in adjudicating Rule 12(b)(6) motion); Kader v. Sarepta Therapeutics, Inc., Civil Action No. 14-14318-ADB, 2016 WL 1337256, at *11 (D. Mass. Apr. 5, 2016) (taking judicial notice of official FDA statement on government website); Rock v. Lifeline Systems Co., Civil Action No. 13-11833-MBB, 2014 WL 1652613, at *12 (D. Mass. Apr. 22, 2014) ("'Court can take

automatically substituted for Turco for purposes of the official
capacity claims under Fed. R. Civ. P. 25(d) ("Rule 25(d)") in
the original complaint.[3]  See Town Utility & Tech. Park, LLC v.
Consol. Edison, Sol., Inc., 2:19-cv-00029-JDL, 2019 WL 4784603,
at *4 n.6 (D. Me. Sept. 30, 2019) (substituting new official as
defendant for official capacity claim against prior official
named in official and individual capacities); Doe v. McGuire,
289 F.Supp.3d 266, 267 n.2 (D. Mass. 2018) (Rule 25(d) provides
"substitution only when a public officer is a 'party in an
official capacity'") (citation omitted); Pacheco-Muniz v.
Gonzalez-Cruz, Civil No. 12-2058-JAG, 2014 WL 1320276, at *5
(D.P.R. Mar. 31, 2014) ("substitution occurs automatically and
'the absence of such an order does not affect the
substitution'").

In addition to Turco, the original complaint names the
Commonwealth, the DOC, O'Brien, and four Pat Doe corrections
officers and sets out eight counts.[4]  During the motion hearing,
plaintiff withdrew without prejudice the four Pat Doe

---

judicial notice and consider documents posted on a government
website'") (citation omitted).
[3]  The amended complaint omits Turco and names Mici as a
defendant.  The original complaint names Turco in his individual
and official capacities.
[4]  The original complaint identifies one Pat Doe defendant as
"the [s]upervising [c]orrections officer" and the remaining
three Pat Doe defendants as "corrections officer[s]."  (Docket
Entry # 1).

corrections officers as defendants.  <u>See</u> Fed. R. Civ. P. 41(a).
Counts II, III, IV, V, and VII in the original complaint assert
claims solely against the Pat Doe corrections officers.  (Docket
Entry # 1).  The remaining claims in the original complaint are
as follows: (1) a failure to train and/or supervise regarding a
denial and/or delay of medical care and regarding a failure to
protect plaintiff from an inmate-on-inmate assault in violation
of the Fifth, Eighth and Fourteenth Amendments under 42 U.S.C. §
1983 ("section 1983") against the original defendants (Count I);
(2) negligence against "[d]efendants Massachusetts Treatment
Center and [the DOC]"[5] (Count VI); and (3) gross negligence by
the MTC and the DOC (Count VIII).  (Docket Entry # 1).

At the motion hearing, this court instructed the original
defendants to file an affidavit to support their asserted
prejudice regarding service of process.  (Docket Entry # 17).
In response, defendants filed an affidavit that simply states
that DOC employment records show O'Brien "was no longer
employed" by the DOC as of June 1, 2017.  (Docket Entry # 18-1).
Also during the motion hearing and in light of the withdrawal of

---

[5] The original complaint does not name the Massachusetts
Treatment Center ("MTC") in the caption of the original
complaint or in the section of the original complaint listing
the parties.  Counts VI and VIII nevertheless allege negligence
and gross negligence against the MTC as well as the DOC.
(Docket Entry # 1, ¶¶ 65-67, 76-77).  Neither Count VI nor Count
VIII of the original complaint identify the Commonwealth as
liable for the alleged negligence and gross negligence.

the Pat Doe corrections officers, this court advised plaintiff to file a motion to amend the complaint.  Thereafter, plaintiff filed a motion to amend the original complaint (Docket Entry # 15), which this court allowed.

The amended complaint omits Turco, the MTC, and the four Pat Doe corrections officers as defendants as well as the above-noted counts against the Pat Doe corrections officers.  (Docket Entry # 16).  It also names Mici in her official and individual capacities as DOC commissioner in lieu of Turco.  (Docket Entry # 16).  The three-count amended complaint asserts the following claims: (1) a failure to train and/or supervise regarding a denial and/or delay of medical care and regarding a failure to protect plaintiff from the inmate-on-inmate assault in violation of the Fifth, Eighth and Fourteenth Amendments under section 1983 against defendants ("AC Count I"); (2) negligence by the Commonwealth and the DOC ("AC Count II"); and (3) gross negligence by the Commonwealth and the DOC ("AC Count III"). (Docket Entry # 16).

In seeking to dismiss the original and/or the amended complaint, defendants argue the following regarding deficient service: (1) plaintiff did not properly serve the original complaint and the amended complaint on the Commonwealth (Docket Entry # 8, p. 3) (Docket Entry # 20, p. 3); (2) service of the original complaint on Turco does not constitute service of the

amended complaint on Mici in her individual capacity (Docket
Entry # 8, p. 3) (Docket Entry # 20, p. 3); (3) plaintiff "made
no service on [O'Brien]" as to the original and amended
complaints (Docket Entry # 8, p. 4) (Docket Entry # 20, p. 4);
and (4) plaintiff failed to properly serve the original
complaint on the original defendants and the amended complaint
on defendants within 90 days as required by Fed. R. Civ. P. 4(m)
("Rule 4(m)") and cannot establish good cause for this failure
(Docket Entry # 8, p. 3)  (Docket Entry # 20, p. 3).  Based on
these arguments, defendants contend this court lacks personal
jurisdiction over the Commonwealth, the DOC, Mici, Turco, and
O'Brien.  (Docket Entry # 8, p. 5) (Docket Entry # 20, p. 6).

     Plaintiff submits he will experience severe prejudice if
the original and amended complaints are dismissed and therefore
seeks an extension of time to effectuate service.  (Docket Entry
# 10, pp. 2-4) (Docket Entry # 10-1, ¶¶ 7-8).  Plaintiff further
notes this court has the discretion "to extend the time for
service even when the plaintiff has not shown good cause."
(Docket Entry # 10, p. 3).  The relevant factors also weigh in
favor of allowing additional time, according to plaintiff.
(Docket Entry # 10, p. 3) (Docket Entry # 10-1, ¶ 8).

     The facts regarding service are straight forward.  On the
same day plaintiff filed the original complaint on July 2, 2018,
the court issued summonses for the original defendants and

provided plaintiff's counsel with notice and instructions to complete a summons "for each defendant and serve it in accordance with Fed. R. Civ. P. 4 and LR 4.1." (Docket Entry # 4). Defendants represent (Docket Entry # 20, p. 2) (Docket Entry # 8, p. 2), and plaintiff, who bears the burden of proof when service is challenged, Choroszy v. Wilkie, 544 F. Supp. 3d 134, 137 (D. Mass. 2021) (when defendant challenges "sufficiency of service of process, the plaintiff bears 'the burden of proving proper service'") (citation omitted), does not dispute (Docket Entry # 10) (Docket Entry # 21, p. 2, ¶ 4), that it was not until April 2020 that a constable delivered a copy of the original complaint and the summonses directed to the Commonwealth, the DOC, and Mici (substituted in her official capacity for Turco) at 50 Maple Road in Milford, Massachusetts. (Docket Entry ## 10, 20). The original and amended complaints describe this address as an office of the DOC. (Docket Entry # 1, ¶¶ 3, 4) (Docket Entry # 16, ¶¶ 3, 4).

On May 11, 2020, defendants' counsel entered an appearance expressly reserving the right to contest service. (Docket Entry # 5). To date, plaintiff's counsel has not filed a return of service with the court, and there is no indication of service on O'Brien.[6] By affidavit, plaintiff's counsel states that his law

---

[6] Rule 4(l)(1) instructs a plaintiff to provide "proof of service" to the court by the server's affidavit unless service

firm uses a calendar entry system to track deadlines and filings.  (Docket Entry # 10-1).  Due to an atypical lapse in data entry for the instant case, plaintiff's counsel missed the service deadline for the first time "in twenty-five years of practice."  (Docket Entry # 10-1).

Defendants separately argue the amended complaint fails to state a claim under Rule 12(b)(6).  (Docket Entry # 20).  They maintain the Eleventh Amendment bars claims for money damages under section 1983 against the Commonwealth and the DOC because they are not "persons" within the meaning of the statute, and against Mici and O'Brien in their official capacities, because state officials acting in their official capacities are also not "persons" within the meaning of section 1983.  (Docket Entry # 20).  Thus, the Eleventh Amendment precludes monetary claims against the Commonwealth and the DOC as well as Mici and O'Brien in their official capacities in AC Count I, according to defendants.[7]  (Docket Entry # 20).

---

is waived.  Fed. R. Civ. P. 4(l)(1); Danastorg v. US Bank National Association, Civil Action No. 15-11512-ADB, 2016 WL 7851407, at *2 (D. Mass. May 3, 2016) ("Rule 4(l)(1) requires the plaintiff to make 'proof' of service to the court, by filing an affidavit of the person who effected service on the defendant.").  "A return of service generally serves as prima facie evidence that service was validly performed."  Blair v. City of Worcester, 522 F.3d 105, 111 (1st Cir. 2008).  A "[f]ailure to prove service does not affect the validity of service."  Fed. R. Civ. P. 4(l)(3).

[7]  The original defendants seek to dismiss the section 1983 claims in Count I of the original complaint against the

With respect to the section 1983 claims against Mici and O'Brien in their individual capacities in AC Count I, defendants first argue that plaintiff is unable to recover against Mici because she was not the DOC commissioner during the relevant time period.[8]  (Docket Entry # 20, p. 10).  Second, they submit neither Mici nor O'Brien was aware that inmate Reginald Crowder ("Crowder") posed a threat to plaintiff, and they cannot be held liable as supervisors under a theory of respondeat superior.[9]  Defendants additionally argue that the Eleventh Amendment bars the negligence and gross negligence claims in AC Counts II and III against the Commonwealth and the DOC.[10]  (Docket Entry # 20).

---

Commonwealth, the DOC, Turco, and O'Brien in their official capacities based on the same Eleventh Amendment argument. (Docket Entry # 8, pp. 7-8).

[8]  The original defendants seek to dismiss the section 1983 claims in Count I of the original complaint against Turco in his individual capacity based on the same argument because he was not the DOC commissioner until April 2016, as evidenced in a government website posting.  (Docket Entry # 8, p. 9) (Docket Entry # 8-1, p. 6).  It is appropriate to consider documents susceptible to judicial notice as part of the Rule 12(b)(6) record, Giragosian v. Ryan, 547 F.3d 59, 65-66 (1st Cir. 2008), including "documents posted on a government website."  Hadley v. Chrysler Group LLC, 2014 WL 988962, at *2 (E.D. Mich. Mar. 13, 2014).

[9]  Here again, the original defendants seek to dismiss the individual capacity section 1983 claims against Turco and O'Brien in Count I based on the same argument.  (Docket Entry # 8, p. 9).

[10]  The original defendants likewise seek to dismiss the negligence and gross negligence claims against the DOC in Counts VI and VIII based on the same argument.  (Docket Entry # 8, pp. 12-13).  Their argument to also dismiss these claims against Commonwealth (Docket Entry # 8, pp. 12-13) is moot because the original complaint does not assert these claims against the

Relatedly, defendants contend that the enactment of the Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. Laws ch. 258, §§ 2, 3, did not waive the Commonwealth's and the DOC's immunity from suit in federal court.  (Docket Entry # 20, pp. 13-14).

STANDARDS OF REVIEW

"'A defendant may challenge the sufficiency of process under Rule 12(b)(4) and may challenge the manner in which process was served under Rule 12(b)(5).'"  Doyle v. YMCA of N.H., Civil No. 21-cv-112-LM, 2021 WL 3146248, at *2 (D.N.H. July 26, 2021) (citation omitted).  A Rule 12(b)(4) challenge to the sufficiency of process involves "'the form of the process rather than the manner or method of its service.'"  Id. (citation omitted).  It "'challenges the content of the summons and whether it complied with Federal Rule of Civil Procedure 4(a) and (b),'" such as by properly identifying the individual designated in a summons.  Id. (citation omitted).  In the case at bar, defendants' arguments concern the manner, mode, and timing of service rather than the actual content of the summons and its compliance with Rules 4(a) and 4(b).  See, e.g., Crossetti v. Cargill, Inc., Case No. 3:18-cv-30002-KAR, 2018 WL

_____

Commonwealth.  See fn. 5.  They additionally submit the negligence and gross negligence claims against the MTC in Counts VI and VIII are subject to dismissal because the MTC "is not a legal person subject to suit" and, alternatively, is considered part of the DOC.  (Docket Entry # 8, pp. 14-15).

2770130, at *3 (D. Mass. June 8, 2018) (defendant does "not object to the content of the summons" under Rule 12(b)(4) "but to the sufficiency of the manner of attempted service" under Rule 12(b)(5)).

A Rule 12(b)(5) challenge to the manner of delivery, Connolly v. Shaw's Supermarkets, Inc., 335 F. Supp. 3d 9, 14 (D. Mass. 2018), "empowers courts to dismiss a complaint for insufficient service of process." Evans v. Staples, Inc., 375 F. Supp. 3d 117, 120 (D. Mass. 2019); Fed. R. Civ. P. 12(b)(5). Where, as here, the defendant "challenges the sufficiency of process under Rule 12(b)(5), the plaintiff has 'the burden of proving proper service.'" Id. (quoting Lopez v. Municipality of Dorado, 979 F.2d 885, 887 (1st Cir. 1992)). In adjudicating a Rule 12(b)(5) motion to dismiss, a court may "look beyond the pleadings and may consider affidavits and other documents to determine whether process was properly served." Cutler Assocs., Inc. v. Palace Constr., LLC, 132 F. Supp. 3d 191, 194 (D. Mass. 2015). "[F]actual ambiguities are . . . resolved squarely in the plaintiff's favor." Id.

Here, the amended complaint includes a new claim, namely, the individual capacity claim against Mici under section 1983. The factual predicate of the claims in the amended complaint is otherwise the same as the factual predicate of the claims in the original complaint. In light of the new claim, service is

required.  Cf. Blair v. City of Worcester, 522 F.3d 105, 109
(1st Cir. 2008) ("amended complaint did not in fact contain a
new claim for relief, and therefore did not require service
under Rule 5(a)(2)").  As discussed below, service of the
original complaint is absent as to O'Brien and is not
accomplished in the proper manner as to the Commonwealth, Mici
in her official capacity, and Turco in his individual capacity.
Rule 4 (as opposed to Fed. R. Civ. P. 5) governs service of an
amended complaint where, as here, the amended complaint has a
new claim or the same claims as an unserved or improperly served
predecessor complaint.  See Cryer v. UMass Medical Correctional
Health, Civil Acton No. 10-11346-PBS, 2011 WL 841248, at *1 (D.
Mass. Mar. 7, 2011) ("service of process of an amended complaint
can only be accomplished under Rule 5 where: (1) the original
complaint was properly served; and (2) the defendants have
appeared").

     To survive a Rule 12(b)(6) motion to dismiss, the operative
complaint must contain "enough facts to state a claim to relief
that is plausible on its face" even if actual proof of the facts
is improbable.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544,
556, 570 (2007); Miller v. Town of Wenham Massachusetts, 833
F.3d 46, 51 (1st Cir. 2016).  The "standard is 'not akin to a
"probability requirement," but it'" requires "'more than a sheer
possibility that a defendant has acted unlawfully.'"  Saldivar

v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (citations omitted).
If the facts in the complaint "are 'too meager, vague, or
conclusory to remove the possibility of relief from the realm of
mere conjecture,'" dismissal is appropriate.  In re Montreal,
Maine & Atl. Ry., Ltd., 888 F.3d 1, 6 (1st Cir. 2018).  "[A]ll
reasonable inferences" are drawn "in the pleader's favor."
Sanders v. Phoenix Ins. Co., 843 F.3d 37, 42 (1st Cir. 2016).

Well-pleaded facts in a complaint must be "non-conclusory"
and "non-speculative."  Schatz v. Republican State Leadership
Comm., 669 F.3d 50, 55 (1st Cir. 2012); accord Saldivar v.
Racine, 818 F.3d at 18 ("conclusory legal allegations" are not
credited).  Viewed under the foregoing Rule 12(b)(6) standard,
the facts, with citations to the original and amended
complaints, are as follows.

## FACTUAL BACKGROUND

"On or about September 3, 2015, [p]laintiff was in the
custody of the [DOC] and housed at the [MTC]."  (Docket Entry #
1, ¶ 14) (Docket Entry # 16, ¶ 9).  On the same date, Crowder
was also in the custody of the DOC and housed in the same
facility.  (Docket Entry # 1, ¶ 15) (Docket Entry # 16, ¶ 10).
"[H]ours earlier," Crowder learned he was civilly committed to
the MTC as a sexually dangerous person.  (Docket Entry # 1, ¶
16) (Docket Entry # 16, ¶ 11).  In the MTC gymnasium, Crowder
engaged in an unprovoked attack on plaintiff, during which

Crowder "slammed a sixty (60) pound iron dumbbell into"
plaintiff's "face, causing him to lose blood, teeth, incur
scarring, pain and ongoing mental anguish and distress."
(Docket Entry # 1, ¶ 17) (Docket Entry # 16, ¶ 12).  In
contravention of required protocol, there was no corrections
officer stationed in the gymnasium.  (Docket Entry # 1, ¶ 18)
(Docket Entry # 16, ¶ 13).  Two other inmates stopped the attack
on plaintiff by restraining Crowder.  (Docket Entry # 1, ¶ 19)
(Docket Entry # 16, ¶ 14).

Mici is the current commissioner of the DOC and is
responsible for pre-employment screening of prospective MTC
"management and corrections officers," training, and supervision
of MTC personnel.  (Docket Entry # 16, ¶ 4).  Appointed to the
position in January 2019, Mici served as the acting commissioner
of the DOC beginning in December 2018.  (Docket Entry # 8-1, pp.
2-3).[11]  Turco occupied the commissioner of the DOC position
beginning in April 2016.  (Docket Entry # 8-1, p. 6).  As DOC
commissioner, Mici and Turco were "responsible for the
administration and oversight of the operations of [MTC],"
including "pre-employment screening," corrections officers'
training, and managing the MTC.  (Docket Entry # 1, ¶ 4) (Docket

---

[11] As explained in footnote two, this court takes judicial notice
of the above-cited document on a government website which
recites Mici's appointment.

Entry # 16, ¶ 4).   Previously, and at the time of the September
2015 incident and prior thereto, Turco "served as Undersecretary
of Criminal Justice in the Executive Office of Public Safety and
Security" and, from 2003 to 2015, as "Chief Probation Officer of
the Worcester Superior Court."  (Docket Entry # 8-1, p. 6).
O'Brien was superintendent of the MTC during the relevant time
period.  (Docket Entry # 1, ¶ 5) (Docket Entry # 16, ¶ 5).  He
was responsible for the administration and oversight of the MTC
including pre-employment screening, training, and supervision of
personnel, as well as "the adoption and implementation of
policies, procedures and regulations necessary" for the safety
of persons housed at the MTC.  (Docket Entry # 1, ¶ 5) (Docket
Entry # 16, ¶ 5).

<u>DISCUSSION</u>

I.  <u>Service of Process</u>

As indicated previously, defendants move to dismiss the
original and the amended complaints for insufficient service of
process because: (1) plaintiff did not properly serve the
original complaint on the original defendants and the amended
complaint on defendants within the 90-day time period required
under Rule 4(m) and fails to show good cause for the failure;
(2) with respect to the original and amended complaints,
"plaintiff cannot serve the Commonwealth by delivering the
summons and the complaint to a state agency," rather, Rule

15

4(d)(3) dictates that service "must be made to the Boston office of the Attorney General for the Commonwealth"; (3) plaintiff did not effectuate proper service on Turco of the original complaint or Mici of the amended complaint in their individual capacities in accordance with Rule 4(e);[12] and (4) plaintiff failed to serve the original and amended complaints on O'Brien in either his official or individual capacity. (Docket Entry # 20, pp. 3-7) (Docket Entry # 8, pp. 3-6). Whereas defendants focus on the failure "to comply with service of the original complaint" with respect to the motion to dismiss the amended complaint (Docket Entry # 20, p. 3), they also note the failure to adhere to Rule 4 relative to service of the amended complaint (Docket Entry # 20, pp. 6-7). Plaintiff submits he will experience severe prejudice and seeks an extension of time to effectuate service. (Docket Entry # 10, pp. 2-4) (Docket Entry # 10-1, ¶¶ 7-8).

To "exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Omni Capital International, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987); see Vázquez-Robles v. CommoLoCo, Inc., 757 F.3d 1, 4 (1st Cir. 2014) ("jurisdiction normally depends on legally sufficient service of process") (citing Omni Capital,

---

[12] This court assumes that the reference to "Fed. R. Civ. P. 4(d)(1)" (Docket Entry # 20, p. 4) is an oversight.

484 U.S. at 104); United Electrical, Radio and Machine Workers
of America v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085 (1st
Cir. 1992) ("service of process constitutes the vehicle by which
the court obtains jurisdiction").  As noted previously,
"plaintiff has the burden of showing that service was proper."
Vázquez-Robles, 757 F.3d at 4 (citation omitted); Choroszy, 2021
WL 2383173, at *2.

Plaintiff acknowledges that the original "[c]omplaint was
not served timely" and his counsel accepts "full responsibility"
for missing the deadline.  (Docket Entry # 10-1, ¶ 6) (Docket
Entry # 10, p. 2).  More broadly, he fails in his burden to show
that the manner of service on the Commonwealth, Mici and Turco
in their individual capacities, or on O'Brien complied with Rule
4(e) or Rule 4(j) for reasons explained below.

As to the Commonwealth and the DOC,[13] Rule 4(j)(2)
authorizes service in a manner prescribed by Massachusetts law.
Fed. R. Civ. P. 4(j)(2).  Massachusetts Rule 4(d)(3) allows
service "upon the Commonwealth or any agency thereof by

---

[13]  The DOC does not waive its right to contest service (Docket
Entry # 20, p. 1, n.1), and there is no proof of service in the
record.  At best, the original and amended complaints allege the
DOC has an office at 50 Maple Street (Docket Entry # 1, ¶ 3)
(Docket Entry # 16, ¶ 3), which defendants acknowledge as the
headquarters of the DOC (Docket Entry # 8, p. 2) (Docket Entry #
20, p. 2), and plaintiff does not contest (Docket Entry # 10),
and which is the apparent location (if any) that a constable
delivered the summonses and the original complaint to the DOC in
April 2020.

delivering a copy of the summons and of the complaint to the
Boston office of the Attorney General of the Commonwealth, and,
in the case of any agency, to its office or to its chairman or
one of its members or its secretary or clerk." Mass. R. Civ. P.
4(d)(3). Service of the original and amended complaints on the
Commonwealth is deficient because plaintiff fails to show that
the constable delivered the summons and the original or amended
complaint to the Attorney General's Boston office. See Cichocki
v. Mass. Bay Cmty. Coll., 174 F. Supp. 3d 572, 577 (D. Mass.
2016) (finding inadequate service on Commonwealth or its
agencies where "there is no indication" that plaintiffs served
or attempted to serve Attorney General's office); Mass. R. Civ.
P. 4(d)(3); see also Blair, 522 F.3d at 111-112 (discussing
defendants' affidavit as sufficient to refute return of service
under Massachusetts law in context of serving individual).

Relatedly, "[t]he Massachusetts Rules of Civil Procedure
yield to specific statutes which establish special service
requirements." Caisse v. DuBois, 346 F.3d 213, 217 (1st Cir.
2003) (applying service rules under MTCA, Mass. Gen. Laws ch.
258, §§ 1 at seq., for negligence claims in complaint but not
for other claims in complaint). The constable's delivery to the
Commonwealth at 50 Maple Street in Milford is also deficient
under the service rules applicable to the claims that are

18

subject to the MTCA, Mass. Gen. Laws ch. 258, §§ 1, 6.  <u>See</u>
<u>Caisse</u>, 346 F.3d at 217.

Absent proper service of the original complaint, the action
"remains in an 'inchoate state'" and it continues in an inchoate
state where, as here, there is no indication, let alone
evidence, of service of the amended complaint.  <u>International</u>
<u>Controls Corp. v. Vesco</u>, 556 F.2d 665, 669 (2d Cir. 1977).  It
is true that an amended complaint "'normally supersedes'" an
original complaint.  <u>In re Jackson</u>, 988 F.3d 583, 592 (1st Cir.
2021) (amended complaint "'normally supersedes the antecedent
complaint'" and "'earlier complaint is a dead letter and no
longer performs any function in the case'") (citation omitted).
Notably, however, an original complaint is not superseded until
service of an amended complaint "at least" with respect to an
amended complaint "*required* to be served under Rule 5(a)."  <u>Id.</u>
(emphasis added).  The same reasoning applies to an amended
complaint required to be served under Rule 4(j).  "'An original
complaint is only superseded . . . when the amended complaint is
properly served, not when it is filed.'"  <u>Mach v. Fla. Casino</u>
<u>Cruise, Inc.</u>, 187 F.R.D. 15, 18 (D. Mass. 1999) (citations
omitted); <u>see</u> <u>Blair</u>, 522 F.3d at 109 ("it is doubtful that the
unserved amended complaint in fact superseded the original

complaint").[14]  Because the amended complaint does not yet
supersede the original complaint, plaintiff's failure to serve
the Commonwealth with either the original or the amended
complaint warrants dismissing the Commonwealth absent an
allowance of an extension of time to effectuate service.

Turning to the challenges to Turco and Mici, Rule 4(e)(1)
allows service on an individual in accordance with Massachusetts
law.  Fed. R. Civ. P. 4(e)(1).  Massachusetts Rule 4(d)(1),
"governing service on individuals, provides for essentially the
same service procedures as [Rule 4(e)(2)(B)] (i.e., personal
service or delivery to the last and usual place of abode)."
Caisse, 346 F.3d at 216-217.  There is no evidence that
plaintiff served Turco or Mici at his or her abode.  The federal
and Massachusetts rules also authorize service via delivering a
copy of the summons and complaint "to an agent authorized by
appointment" or law "to receive service of process."  Blair, 522
F.3d at 110 (quoting Rule 4(e)(2)(C) and Massachusetts Rule
4(d)(1)).  Here again, the record fails to show service of
either Turco or Mici through an authorized agent.  As such,
service directed to Mici and Turco in their individual

---

[14]  Accordingly, the operative complaint relative to the Rule
12(b)(6) analysis is the original complaint.  Out of an
abundance of caution, this court additionally analyzes the
claims in the amended complaint for failure to state a claim
under Rule 12(b)(6).

capacities is lacking.  With respect to serving an individual
sued in his or her official capacity, service of process is
governed by the rules applicable to individuals, which include
the rules applicable for serving an individual under
Massachusetts law.  See Caisse, 346 F.3d at 216 ("service of
process for public employees sued in their official capacities
is governed by the rule applicable to serving individuals")
(citation omitted).

    As for O'Brien, defendants contend plaintiff has yet to
accomplish service.  The record does not include a return of
service, and there is no indication of proper service of the
original or amended complaint on O'Brien.  See Cutler Assocs.,
Inc. v. Palace Constr., LLC, 132 F. Supp. 3d 191, 194 (D. Mass.
2015) (plaintiff has burden to show proper service).  Service of
process on O'Brien is therefore also deficient.

    As for the timeliness of plaintiff's service, defendants
contend he fails to abide by the 90-day period mandated by Rule
4(m) and cannot show good cause for the failure.  (Docket Entry
# 20).  Plaintiff maintains he "should not be punished for the
error of his attorney" of not logging the service deadline into
law firm's calendar entry system.  (Docket Entry # 10, p. 2).

    Rule 4(m) addresses the time limit for service and reads as
follows:

> If a defendant is not served within 90 days after the
> complaint is filed, the court—on motion or on its own after
> notice to the plaintiff—must dismiss the action without
> prejudice against that defendant or order that service be
> made within a specified time.  But if a plaintiff shows
> good cause for the failure, the court must extend the time
> for service for an appropriate period.

Fed. R. Civ. P. 4(m).  If a defendant is not served within the

prescribed period, Rule 4(m) "offers two avenues for extending

the prescribed time period for the service of a complaint, one

mandatory, one discretionary."  Martello v. United States, 133

F. Supp. 3d 338, 344 (D. Mass. 2015).  As described in Rule

4(m), a showing of good cause requires a court to extend the

time for service for an appropriate period.  Fed. R. Civ. P.

4(m).  "[I]f there is no good cause, the court has the

discretion to dismiss without prejudice or to extend the time

period."  Martello, 133 F. Supp. 3d at 344 (citations and

quotation marks omitted).

    A showing of good cause can be found when:

> the plaintiff[']s failure to complete service in [a] timely
> fashion is a result of a third person, typically the
> process server, the defendant has evaded service of the
> process or engaged in misleading conduct, the plaintiff has
> acted diligently in trying to effect service or there are
> understandable mitigating circumstance[s], or the plaintiff
> is proceeding pro se or in forma pauperis.

Egan v. Tenet Health Care, 193 F. Supp. 3d 73, 84 (D. Mass.

2016) (citation omitted).

    Here, it is clear that timely service did not occur.  Under

Rule 4(m), plaintiff needed to serve defendants by October 2018

in order to abide by the prescribed service period.  In addition, defendants correctly contend that there has been no showing of third person interference, evasiveness on behalf of defendants, or mitigating circumstances that would require a finding of good cause.  Good cause, which would require an extension of time, is absent.

With respect to the discretion to extend time for service without good cause, defendants argue that plaintiff's failure to request an extension of time under Fed. R. Civ. P. 6(b) weighs against him, and they will suffer significant prejudice due to the lapse of time between the alleged events and actual notice of the suit.  (Docket Entry # 8).  In response, plaintiff argues that the three-prong discretionary analysis favors him because defendants have actual notice of the controversy, any prejudice defendants face is inherent to defense of the suit, and plaintiff would suffer prejudice "for the failings of his counsel."[15]  (Docket Entry # 10).

---

[15]  Plaintiff does not argue that the expiration of a statute of limitations results in prejudice.  His failure to raise such an argument operates as a waiver.  See Curet-Velázquez v. ACEMLA de Puerto Rico, Inc., 656 F.3d 47, 54 (1st Cir. 2011) ("[a]rguments alluded to but not properly developed before a magistrate judge are deemed waived"); Coons v. Industrial Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010) ("district court was 'free to disregard' the state law argument that was not developed in Coons's brief").

Without a showing of good cause, "a court's discretion to extend time for service is guided by three factors: (1) whether the party to be served received actual notice of the lawsuit; (2) whether the defendant would suffer prejudice; and (3) whether the plaintiff would be severely prejudiced if his complaint were dismissed." Awadh v. Tourneau, Inc., Civil Action No. 15-13993, 2017 WL 1246326, at *3 (D. Mass. Feb. 17, 2017). "District courts within the Court of Appeals for the First Circuit are divided on whether a discretionary extension absent good cause is appropriate where a plaintiff fails to seek an extension of time within the 120-day period." Diaz-Rivera v. Supermercados Econo Inc., 18 F. Supp. 3d 130, 135 (D.P.R. 2014).[16]  Additionally, "[a] defendant suffers prejudice when the delay harms his or her ability to mount an effective defense to the claims against him or her." Id.

Here, defendants suggest, but do not adequately show, prejudice from the delay in service.  See Martello, 133 F. Supp. 3d at 347 (D. Mass. 2015) (extending service date where defendant has not shown prejudice); see also Cichocki, 174 F. Supp. 3d at 578 (extending service where "there is nothing in the record to suggest that the defendants would be prejudiced").

---

[16]   Rule 4(m) was amended in 2017 to allow a 90-day window instead of a 120-day window referenced in Diaz-Rivera.  See Fed. R. Civ. P. 4(m).

This court cannot assume that prejudice exists because of an unsupported statement in the defendants' brief, particularly when this court asked for an affidavit to support the brief's contentions and the responsive affidavit (Docket Entry # 18-1) is deficient.  The affidavit defendants filed does not identify defendants' lost opportunity to recall the alleged incident or how the delay impacts defendants' ability to mount an effective defense.  See Bunn v. Gleason, 250 F.R.D. 86, 90-91 (D. Mass. 2008) (finding prejudice where defendant's affidavit identifies memory recall as prejudice in mounting a defense); see also Thurlow v. York Hospital, Civil Action No. 16-179-NT, 2016 WL 4033110, at *2 (D. Me. Jul. 27, 2016) ("defendant suffers prejudice when the delay harms his or her ability to mount an effective defense").  As defendants received actual notice of the suit, as evidenced by this motion to dismiss, see Awadh, 2017 WL 1246326 at *4, and failed to show prejudice in allowing plaintiff to move forward with his claims, this court will exercise its discretion to extend the service date by 45 days from the date of this opinion.

Accordingly, this court turns to defendants' Rule 12(b)(6) request to dismiss the original and amended complaints for failure to state a claim.

II.  Failure to State a Claim

A.  Section 1983 Claims

25

In both Count I of the original complaint and AC Count I,
plaintiff alleges violations of his Fifth, Eighth, and
Fourteenth Amendment rights under section 1983.[17]  (Docket Entry
# 16).  Defendants first argue that the federal claims fail
because the Eleventh Amendment precludes recovery for money
damages from a state (the Commonwealth), a state's agency (the
DOC), and its actors (Turco, Mici, and O'Brien) in their
official capacities under section 1983.  (Docket Entry ## 8,
20).  Defendants next argue that the individual capacity claims
against Turco, O'Brien, and Mici fail because neither Turco nor
Mici was the DOC commissioner during the September 2015 assault,
and because plaintiff's allegations are conclusory and fail to
establish O'Brien's awareness or involvement in the alleged
deprivation of civil rights.  (Docket Entry ## 8, 20).
Plaintiff submits a state or state governmental body is subject
to liability when "it causes a constitutional violation," and
"it is unreasonable to require [him] to plead with specificity
all of the facts of a policy or custom, or training practice"
without discovery.  (Docket Entry # 10, p. 5).  He also contends
that the original and amended complaints contain plausible
inferences to support the section 1983 claims.  (Docket Entry #

---

[17] As explained in footnote 14, this court analyzes the claims in
the original complaint and, out of an abundance of caution, the
claims in the amended complaint for failure to state a claim
under Rule 12(b)(6).

10) (Docket Entry # 21, p. 2, incorporating prior arguments).
He mistakenly relies on Monell v. Dep't of Social Services of
City of New York, 436 U.S. 658 (1978), to support his contention
that state entities may be sued under section 1983.  (Docket
Entry # 10).

   As argued by defendants, the Eleventh Amendment bars the
section 1983 claims for money damages against the Commonwealth,
the DOC, and Mici and O'Brien in their official capacities.[18]
The doctrine of sovereign immunity, as prescribed by the
Eleventh Amendment, extends "immunity to state governments in
suits not only by citizens of another state, but by its own
citizens as well." Vaqueria Tres Monjitas, Inc. v. Irizarry,
587 F.3d 464, 477 (1st Cir. 2009).  "Section 1983 provides a
federal forum to remedy many deprivations of civil liberties,
but it does not provide a federal forum for litigants who seek a
remedy against a State for alleged deprivations of civil
liberties." Will v. Michigan Dep't of State Police, 491 U.S.
58, 66 (1989).  As aptly argued by defendants (Docket Entry # 8,
p. 8) (Docket Entry # 20, p. 9), the Commonwealth and its
agencies are not "persons" within the meaning of section 1983.
Id. at 71 ("hold[ing] that neither a State nor its officials

---

[18] As previously noted, Mici, in her official capacity, is
substituted for Turco in his official capacity in the original
complaint.

acting in their official capacities are 'persons' under §
1983").  Thus, a state "may not be sued for damages in federal
court unless [it] has consented, or its immunity has been
waived, or Congress has overridden the immunity," which, as to
the latter option, "Congress did not do so in the case of
[section] 1983." Facey v. Dickhaut, 892 F. Supp. 2d 347, 355
(D. Mass. 2012) (internal citations and quotation marks
omitted); see Will, 491 U.S. at 67.  The Commonwealth is
therefore entitled to Eleventh Amendment immunity, and the
section 1983 claims against it are subject to dismissal.

"It is [also] well settled 'that neither a state agency nor
a state official acting in his official capacity may be sued for
damages in a section 1983 action.'" Fantini v. Salem State
Coll., 557 F.3d 22, 33 (1st Cir. 2009).  The section 1983
official capacity claims against Mici and O'Brien are therefore
subject to dismissal.  Notably, with respect to the DOC, the
Supreme Court limited its holding in Monell to "local government
units which are not considered part of the State for Eleventh
Amendment purposes." Monell v. Dep't of Social Services of City
of New York, 436 U.S. 658, 690 n.54.  In Massachusetts, "[t]he
[DOC] is an agency of the Commonwealth and thus entitled to
Eleventh Amendment immunity." Sepulveda v. UMass Correctional
Health, Care, 160 F. Supp. 3d 371, 396 (D. Mass. 2016).  The
section 1983 claims against the DOC are therefore subject to

dismissal.  In sum, and in accordance with the above law, the Commonwealth, the DOC, as well as Mici and O'Brien in their official capacities are subject to Eleventh Amendment immunity, and the section 1983 claims against them in the original and amended complaints are subject to dismissal.

Next, defendants contend that the section 1983 claims against Turco, Mici, and O'Brien in their individual capacities fail because plaintiff cannot plausibly show that these defendants were a cause of the alleged deprivation of plaintiff's constitutional rights.  (Docket Entry ## 8, 20). Specifically, defendants argue that: (1) plaintiff cannot recover from Mici and Turco for events that transpired in September 2015 because they were not the DOC commissioner at that time; (2) plaintiff cannot establish any acts or omissions on the part of O'Brien to establish supervisory liability and deliberate indifference to plaintiff's safety on the part of O'Brien.  (Docket Entry ## 8, 20).  Plaintiff maintains defendants were deliberately indifferent to an unconstitutional practice or custom, and that discovery could expose "a widespread pattern of tolerance of assaultive predation upon those such as Plaintiff."  (Docket Entry # 10, p. 6) (Docket Entry # 21, p. 2, incorporating prior arguments).

On January 23, 2019, Turco, then "Secretary of Public Safety and Security," announced the appointment of Mici as the

DOC commissioner.  (Docket Entry # 8-1).  Although the document
further states that Mici served as acting commissioner since
December 2018, this time period likewise shows she was not the
commissioner during plaintiff's 2015 assault.  (Docket Entry #
8-1, pp. 3-4).  Turco was not appointed DOC commissioner until
April 2016 and previously served as undersecretary of criminal
justice in the executive office of public safety and security.
As such, neither Mici nor Turco were involved in the events or
in charge as DOC commissioner during the September 2015 assault
or prior thereto regarding the existence of a policy, custom, or
practice.  Accordingly, they lack a causal connection to the
alleged misconduct.  See Baptista v. Hodgson, Civil Action No.
16-11476-LTS, 2019 WL 319584, at *9 (D. Mass. Jan. 24, 2019)
(dismissing individual capacity claim against Sheriff who was
not present at the event or subject to supervisory liability);
Lucero v. Evangelidis, 333 F. Supp. 3d 1, 4 (D. Mass. 2018)
(dismissing individual capacity claims where complaint did not
plead any facts inferring defendant supervisor's causal
connection to harm).  Plaintiff thus fails to "'plead [] factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged.'"
Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009)
(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  The

foregoing section 1983 claims against Mici and Turco in their individual capacities are therefore subject to dismissal.[19]

Defendants next challenge the section 1983 individual capacity claims against O'Brien on the basis that he lacked actual knowledge of the potential risk to plaintiff's safety and was not deliberately indifferent to any such risk.[20]  They further maintain that the original and amended complaints do not identify any act on the part of O'Brien in September 2015 and seek to impose liability on O'Brien based on respondeat superior.  (Docket Entry # 8, pp. 8-12) (Docket Entry # 20, pp. 9-13).

The Eighth Amendment protects prisoners from cruel and unusual punishment, and in so doing, it "imposes a duty on prison officials to 'take reasonable measures to guarantee the safety of the inmates.'"  Norton v. Rodrigues, 955 F.3d 176, 185 (1st Cir. 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)).  In establishing an Eighth Amendment violation, two

---

[19]  The deficiencies of the section 1983 claims against Mici in her individual capacity under the Eleventh Amendment render it unnecessary to address defendants' argument regarding the untimeliness of the section 1983 claims against her and the failure of the claims to relate back to the filing of the original complaint under Fed. R. Civ. P. 15(c)(1)(C).  (Docket Entry # 20, pp. 5-6).

[20]  In presenting the above argument, defendants set out the law regarding deliberate indifference to a prisoner's safety rather than a prisoner's medical care.  (Docket Entry # 8, pp. 11-12) (Docket Entry # 20, pp. 12-13).

requirements must be met.  First, "the alleged deprivation of
adequate conditions must be objectively serious, i.e., 'the
inmate must show that he is incarcerated under conditions posing
a substantial risk of serious harm.'"  Cordero v. Dickhaut,
Civil Action No. 11-10098-FDS, 2014 WL 6750064, at *6 (D. Mass.
Sept. 19, 2014) (quoting Giroux v. Somerset Cty., 178 F.3d 28,
32 (1st Cir. 1999)).  Second, "a prison official . . . must
'possess[] a sufficiently culpable state of mind, namely one of
"deliberate indifference" to an inmate's health or safety.'"
Norton, 955 F.3d at 185 (citations omitted).  "Demonstrating
deliberate indifference requires . . . knowledge of a
substantial risk of serious harm and an unreasonable response to
the same" on behalf of the prison official.  Id.  In the context
of supervisory liability, "[d]eliberate indifference requires a
plaintiff to demonstrate or allege '(1) a grave risk of harm,
(2) the defendant's actual or constructive knowledge of that
risk, and (3) his failure to take easily available measures to
address the risk.'"  Justiniano v. Walker, 986 F.3d 11, 20 (1st
Cir. 2021) (internal citations omitted).

Here, as argued by defendants (Docket Entry # 8, p. 12)
(Docket Entry # 20, p. 13), the original and amended complaints
fail to plead sufficient facts to suggest that O'Brien had
knowledge of a substantial risk of harm or was deliberately
indifferent to that risk.  In the original and amended

complaints, plaintiff alleges that no correctional officer was present in the gymnasium to oversee the inmates and prevent the attack on plaintiff.  (Docket Entry ## 1, 16).  Neither complaint establishes a plausible inference that O'Brien knew that an officer was not present and therefore a risk of harm existed, or that the lack of an officer at the scene was caused by an unreasonable response from O'Brien constituting deliberate indifference to plaintiff's safety.  Defendants therefore correctly contend that the original and amended complaints do not set out a plausible factual basis establishing O'Brien's knowledge of the potential risk and deliberate indifference to that risk.

Relatedly, defendants maintain that O'Brien cannot be held liable for the section 1983 claims via a theory of respondeat superior.  (Docket Entry ## 8, 20).  "There is no respondeat superior liability under section 1983 . . . absent evidence of participation, concerted action, or at least culpable knowledge" on behalf of the supervising officer.  Adams v. Cousins, Civil Action No. 06-40117-FDS, 2009 WL 1873584, at *7 (D. Mass. Mar. 31, 2009) (citations and quotation marks omitted).  Restated, "[s]upervisory officials may be held liable only 'on the basis of their own acts or omissions'" that "'amount to a reckless or callous indifference to the constitutional rights of others.'"

Gary v. McDonald, Civil Action No. 13-12847-JLT, 2014 WL
1933084, at *1 (D. Mass. May 13, 2014).

However, "[a] supervisor may be held liable for the
constitutional violations committed by his subordinates where
'an affirmative link between the behavior of a subordinate and
the action or inaction of his supervisor exists such that the
supervisor's conduct led inexorably to the constitutional
violation.'"  Morales v. Chadbourne, 793 F.3d 208, 221 (1st Cir.
2015) (citation omitted).  The requisite "affirmative link" can
be established "by alleging that the supervisor was 'a primary
violator or direct participant in the rights-violating incident'
or that 'a responsible official supervises, trains, or hires a
subordinate with deliberate indifference toward the possibility
that deficient performance of the task eventually may contribute
to a civil rights violation.'"  Id. (citation omitted).

Defendants assert that the allegations in the original and
amended complaints are conclusory and fail to establish any acts
or omissions linking O'Brien to the alleged deprivation of
rights.  (Docket Entry ## 8, 20).  They are correct.  The
original and amended complaints fail to state or reasonably
infer that O'Brien participated in the alleged misconduct, and
they otherwise make bald assertions that O'Brien failed to
"adequately train supervisory and non-supervisory personnel for
the management and care" of prisoners.  (Docket Entry # 1, ¶ 28)

34

(Docket Entry # 16, ¶ 23).  "Absent participation in the challenged conduct, a supervisor can be held liable only if . . . the supervisor's action or inaction was *affirmatively* linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence of the supervisor amounting to *deliberate indifference*."  Jaundoo v. Clarke, 690 F. Supp. 2d 20, 32 (D. Mass. 2010) (citation omitted) (emphasis in original).  Neither the original complaint nor the amended complaint state or reasonably infer plausible facts, as opposed to legal conclusion, of the requisite "affirmative link" to hold O'Brien accountable through supervisory liability.  See Jaundoo, 690 F. Supp. 2d at 32.  The section 1983 claims regarding plaintiff's safety against O'Brien in his individual capacity are therefore subject to dismissal.

In summary, all of the section 1983 claims in the original and amended complaints against the Commonwealth, the DOC, and O'Brien and Mici in their official capacities are subject to dismissal under the Eleventh Amendment.  In addition, plaintiff fails to plausibly allege Mici's and Turco's connection to the September 2015 events in the original and amended complaints, and the claims against them in their individual capacities are therefore subject to dismissal.  However, defendants' arguments do not warrant dismissal of the section 1983 denial of medical

care claims against O'Brien in his individual capacity, which
defendants do not address.  These claims therefore remain in AC
Count I as well as Count I in the original complaint (Docket
Entry # 1, ¶¶ 32, 36, 38) (Docket Entry # 16, ¶¶ 27, 31, 38).
Thus, only the failure to supervise and train claims regarding
the failure to protect plaintiff from the inmate assault are
subject to dismissal against O'Brien in his individual capacity.
The section 1983 claims regarding plaintiff's medical care
survive the motions to dismiss with respect to O'Brien in his
individual capacity.

B.  State Law Claims

     In AC counts II and III, plaintiff alleges negligence and
gross negligence by the Commonwealth and the DOC.  (Docket Entry
# 16).  Counts VI and VIII in the original complaint raise the
same claims against the MTC and the DOC.[21]  (Docket Entry # 1).
Specifically, the original and amended complaints allege that
the Commonwealth, the DOC, and/or the MTC had a duty to properly
train and supervise staff to protect inmates, and that plaintiff

_____

[21]  The MTC is not named as a defendant in the caption of the
original complaint or in the section of the complaint
identifying the parties.  See Narragansett Jewelry Co., Inc. v.
St. Paul Fire and Marine Ins. Co., 555 F.3d 38, 41 (1st Cir.
2009) (examining "plain language" of complaint and its structure
to determine if it raised a claim).  Out of an abundance of
caution and because defendants argue that these counts against
the MTC fail to state a claim (Docket Entry # 8, p. 14), this
court assumes arguendo that the counts raise a claim against the
MTC.

suffered damages as a "direct and proximate result" of such negligence and gross negligence.  (Docket Entry ## 1, 16).  Defendants argue that the claims for negligence and gross negligence against the Commonwealth and the DOC are subject to dismissal because state law and the Eleventh Amendment bar plaintiff from bringing these claims in federal court.  (Docket Entry # 8, pp. 12-13) (Docket Entry # 20, pp. 13-14).  They are correct.

As previously discussed, "the Eleventh Amendment bars suits in federal court against states and state officers alleging violations of state law . . . unless the state has waived its immunity."  Canales v. Gatzunis, 979 F. Supp. 2d 164, 173 (D. Mass. 2013).  The Massachusetts Supreme Judicial Court definitively holds that the MTCA "grants exclusive jurisdiction over claims brought under the statute to the Commonwealth's Superior Courts."  Wolski v. Gardner Police Dep't, 411 F. Supp. 3d 187, 193 (D. Mass. 2019) (citing Irwin v. Comm'r of Dep't Youth Servs., 448 N.E.2d 721 (Mass. 1983)).  Because the MTCA provides only a limited waiver of negligence claims for those brought in Massachusetts Superior Court, the enactment of the MTCA did not extend the waiver of Eleventh Amendment immunity to MTCA claims for negligence brought in federal court.  See Caisse, 346 F.3d at 218 ("[b]y enacting the Massachusetts Tort Claims Act, the Commonwealth has not waived its Eleventh

Amendment immunity to suit in federal court."); <u>Wolksi</u>, 411 F. Supp. 3d at 193 (limited sovereign immunity waiver under MTCA does not apply to suits in federal court).  As a result, the First Circuit and courts in this district "consistently [hold] that claims brought under the [MTCA] in federal court ought [to] be dismissed."  <u>Wolski</u>, 411 F. Supp. 3d at 193 (quoting <u>Caisse</u>, 346 F.3d at 218); <u>accord</u> <u>Rivera v. Massachusetts</u>, 16 F. Supp. 2d 84, 88 (D. Mass. 1998).  As stated in <u>Rivera</u> and repeated in <u>Wolski</u>, "the Commonwealth has not waived its immunity from suit in federal court as to tort claims and therefore this Court lacks jurisdiction -- either original or supplemental -- over [the plaintiff's] claim against the Commonwealth."  <u>Rivera</u>, 16 F. Supp. 2d at 88; <u>accord</u> <u>Wolski</u>, 411 F. Supp. 3d at 193.  Furthermore, a plaintiff "may not assert common-law negligence claims to avoid compliance with the MTCA."  <u>Canales</u>, 979 F. Supp. 2d at 176.  As explained previously, the Eleventh Amendment provides immunity to the DOC as well as the Commonwealth.

As neither the Commonwealth nor the DOC waived its Eleventh Amendment immunity to suit in federal court, the negligence and gross negligence claims cannot succeed.  Accordingly, AC Counts II and III and Counts VI and VIII in the original complaint against the Commonwealth and the DOC are subject to dismissal.

As a final matter, defendants move to dismiss Counts VI and VIII in the original complaint against the MTC because it is a physical building and therefore "not a legal person subject to suit" and, alternatively, is considered part of the DOC. (Docket Entry # 8, p. 14).  This court agrees for the reasons cited by the original defendants.  (Docket Entry # 8, p. 14).

By way of explanation with respect to the second argument, the original defendants cite Woodbridge v. Worcester State Hospital, 423 N.E.2d 782, 783, 384 n.3 (Mass. 1981), in which the court afforded the same sovereign immunity to the Worcester State Hospital "as the Commonwealth because the hospital is conceded to be a State facility."  Id.; (Docket Entry # 8, p. 14).  They also rely on Com. v. ELM Medical Labs., Inc., 596 N.E.2d 376, 379-381 & n.9 (Mass. App. Ct. 1992) ("draw[ing] no distinction between suits against the Commonwealth and, as here, suits against a department of the Commonwealth" for purposes of sovereign immunity) (affirming directed verdict on crossclaim against Massachusetts Department of Public Health).  (Docket Entry # 8, p. 14).  Here, to the extent the MTC is considered anything other than a physical building, it is part of the DOC such that a suit against the MTC is the same as a suit against the DOC, which is subject to sovereign immunity.  See also Harrison v. Massachusetts Bay Transportation Authority, 2020 WL 4347511, at *4 n.3 (Mass. Super. Ct. June 18, 2020).

CONCLUSION

In accordance with the foregoing discussion, the motions to dismiss for failure to state a claim (Docket Entry ## 7, 19) are **ALLOWED** as to the Commonwealth, the DOC, the MTC, Turco, and Mici.  The motions to dismiss (Docket Entry ## 7, 19) as applied to O'Brien are: **ALLOWED** as to the official capacity claims and the failure to train and supervise claims regarding the failure to protect plaintiff from the inmate assault; and **DENIED** as to the failure to train and supervise claims regarding a denial and/or delay of medical care.  Plaintiff is given 45 days from the date of this opinion to accomplish service upon O'Brien.  In the event he fails to accomplish such service or show good cause, plaintiff is advised that this case may be subject to a dismissal without further notice.  See L.R. 4.1.

                        /s/ Marianne B. Bowler
                    **MARIANNE B. BOWLER**
                    United States Magistrate Judge